J. R. UNDERWOOD, EX'R, *v.* JNO. BURTON.

**Decedent's Estates—Judgment of a Foreign State Binding in Kentucky.**
Where a judgment .establishing a claim against an estate has been entered in a foreign state it will be final here unless there is some defense offered that did not exist in the state where entered. The holder of such a judgment cannot be required to establish his claim here, but his claim consists of the sum adjudged due him in the judgment.

APPEAL FROM BARREN CIRCUIT COURT.

April 10, 1875.

OPINION BY JUDGE PRYOR:

The settlement of the estate of James Brown, the elder, involved the settlement of other estates and partnerships in the state of Virginia, over which the courts of Kentucky had no jurisdiction, either of the subject matter or the parties interested. The estate of Bur-

ton could not have been settled in Kentucky, and the only remedy that his heirs or devisees had, in order to obtain an adjustment of the accounts of James Brown as the executor of the will of Burton, was by a proceeding in the courts of Virginia. To require such a proceeding in Kentucky would not only be impracticable, but without any legal sanction. A majority of the executors of James Brown, the elder, had qualified in Virginia, the place of their testator's residence; and there was no one else against whom the heirs and devisees of Burton could proceed to recover their patrimony.

The proceeding, however, in Virginia was instituted by James Brown's executors for a settlement of his estate, and a settlement of his accounts as the executor of the will of Burton. To this proceeding Burton's devisees were made defendants, and asserted their claim as such to the money and property that had passed to James Brown, as executor, and for which he had never accounted. The Virginia court ascertained the definite amount due John Burton, the appellee in this case, and gave him an unconditional judgment for the money. The court reserved by the judgment the right of determining the personal liability of the executors of James Brown, and also directs the sale of certain property, in order that distribution may be made. It is alleged by the appellee that he had received nothing upon his judgment in Virginia; and if he has, the Kentucky executor and trustee should make it appear, as this is the character of defense he should be allowed to make.

After a litigation of thirty or forty years in Virginia with two of the executors of Brown, in order to determine what the appellee was entitled to, it is now insisted that all these matters should be relitigated in Kentucky in an action against the Kentucky executor. If this executor is allowed to thus resist the claim of the appellee, or to plead the statute of limitations, it is, in fact, annulling the judgment of the Virginia court, and enabling the Kentucky executor to sell the trust estate in Kentucky, and pay over the proceeds to the Virginia executors, and heirs or devisees of James Brown, with whom appellee has been litigating, and against whom the judgment sought to be enforced was obtained. The present claim of the appellee is based on that judgment, and it must be regarded as final, unless there is some defense offered by the present appellant that did not exist in Virginia, affecting the merits of the controversy. No such defense is relied on in this case. The estate of Brown must be regarded as a unit, and the executors of his will, however numerous, constitute only one representative.

If the two executors in Virginia had settled with Burton without the intervention of a court of equity, it would have been binding on the Kentucky executor, in the absence of any defense showing that some injustice had been done the estate. We do not mean to say that the Kentucky executor could make no defense. He would be allowed to show payments, if any, made by him, or to make any other defense to the merits known to the Virginia executors. The Virginia executors may yet show, even after judgment, a payment reducing the amount by the Kentucky executors, but to require that the claimant must establish his original claim as against the estate when once reduced to judgment, in attempting to make his money out of an executor in a case like this, who was not before the court, would defeat the ends of justice and enable such litigation to continue without limit. This party appellee, has been kept out of his money for more than half a century by the default of the executors of his father's will; and the representatives of that executor ought now to pay the money, if the estate of their testator is sufficient for that purpose.

As to the interest of the appellee in the estate of James Brown, Jr., in the lands in Kentucky, there can be but little question. The lands in Kentucky were conveyed to the appellant and others in trust for certain specified purposes, viz., for the payment of certain liabilities, and among them the claims of the devisees of Burton. After the execution of the trust, the trust property consisting of these lands belonged to James Brown. He owned the estate, subject to the incumbrances created by this deed. It is true that the trustees were invested with the legal title; but this did not deprive the grantee or his heirs of the right to the land left after paying the debts. At the death of James Brown this interest would have passed by descent to his heirs; and certainly he had the right to dispose of it by will. His will, made in 1841, gave his estate to his seven children, James Brown, Jr., being one of them. Burton was a half brother of James Brown, Jr., and whilst he may not have any of the blood of James Brown's son in his veins, he has some of the blood of James Brown, Jr., and for this reason is permitted by the statute to inherit. We cannot see the force of the argument by appellant that this property, such as was left of it, passed only to such of the heirs as were or might be living when the trust is finally settled, such is not the language of the deed, and if James Brown, the elder, had any interest in it, this interest passed to his devisees. The administrator of James Brown, Jr., is not a necessary party. As such

he has no interest in this trust estate and no creditor of James Brown is asserting any claim to his interest by attempting to subject it.

The only difficulty we have had in determining this case, is upon the cross-appeal of the appellee. The Virginia court gave to the appellee a judgment for the principal debt, with the interest, the commissioner's report showing what the interest was. We see no reason why a debt bearing interest may not be made principal by the judgment when rendered. This has often been done in Kentucky, and there are strong reasons for applying the rule here. This the court would do if such intention could be gathered from the Virginia judgment. It is based upon the commissioner's report showing the principal debt, and also the interest, the two being kept separate. This is no judgment for the principal and interest added, but a judgment, in effect, for the debt and interest. It was not intended to compound the interest by this judgment, and it may be questionable whether such a judgment could have been rendered under the law of that state. The court below has given no interest on the interest from the date of the commissioner's report in Virginia, but has given interest only on the principal. When the final judgment was rendered in 1869 by the court below, the interest was then made principal and the whole amount made to bear interest. This, we are satisfied, was proper, and under the facts of the case such a judgment should have been rendered.

The offer to pay the money into court on the principal was properly refused. The same should be applied first to the interest; and if appellant's theory be correct, this $27,000 was all interest; if so, it should have been first paid, and to determine otherwise would be regarding that large sum as a principal debt not bearing interest, and that the debtor had the right to apply his payment to the debt that was bearing interest. This would be the correct practice if such were the facts of the case, but it is not pretended by appellant that this large sum is a part of the principal debt, but only interest, and if so it should have been first paid. This question, however, is now immaterial, as it is all made principal by the judgment rendered. The appellant, as the Kentucky executor, brought this action to hasten the settlement of this large trust estate, for the reason of the manifest injustice done the parties interested, by the long and protracted litigation in Virginia. This appellee has been kept out of his money for more than sixty years, and whilst the neglect or laches is not to be attributed to the action of the appellant, but to

30

those who have been directly interested as fiduciaries in Virginia, the litigation must end. The judgment of the court below is *affirmed* on the original and cross-appeal.

*I. R. Underwood, for appellants. Lewis & Bales, for appellee.*